SLADE *v.* BARBER, administratrix.

No. 15272.   JANUARY 9, 1946.   REHEARING DENIED FEBRUARY 21, 1946.

*George W. Williams* and *E. F. Strozier,* for plaintiff in error.
*Leonard Farkas, Walter H. Burt,* and *J. W. Dennard,* contra.

HEAD, Justice. ■ It is alleged that John H. Shrouder, the head of a family consisting of his wife, Sallie E. Shrouder, and four minor children, was the owner, and in possession of all of land lot No. 58 in the 14th district of Dooly (now Crisp) County at the time of his application for homestead, which was duly allowed and approved by the ordinary in December, 1883. This allegation as to ownership at the time of the application for homestead is qualified by the allegation that in 1879 Shrouder had made to Eliza Clements an instrument which was a warranty deed in form, but a security deed in fact, covering all of lot 58, to secure an indebtedness of $300. Thus, at the time of the application for homestead, all that was vested in Shrouder was possession of the lands with a right of redemption. *West* v. *Bennett,* 59 *Ga.* 509; *Kirby* v. *Reese,* 69 *Ga.* 452; *Mozley* v. *Fontana,* 124 *Ga.* 378 (supra) ; *Morgan* v. *Community Loan & Investment Co.,* 195 *Ga.* 675 (4) (supra).

It is insisted that Raines "did take up the Eliza Clements deed," and that Raines collected rents and profits from the land in an amount sufficient to pay the indebtedness of Mrs. Shrouder

to Raines and to pay the amount due Raines for taking up the security deed from Shrouder to Eliza Clements, and that the homestead thus became operative. It is not alleged or contended that there was any transfer from Raines to Shrouder or to Mrs. Shrouder of such title as Raines may have acquired under the Eliza Clements deed. Eliza Clements having a warranty deed to the lands, in order for Raines to take up the debt of Shrouder, there must have been some conveyance from Clements to Raines. Since no transfer is alleged from Raines to Shrouder or his wife, there was no legal redemption of the property under the Eliza Clements deed, and the homestead did not become operative as a matter of law as against such interest as Raines may have acquired by taking up the Eliza Clements deed.

If there was an equitable redemption of the property as contended, then Shrouder, as trustee for the beneficiaries of the homestead, under the ruling in *Taylor* v. *James,* 109 *Ga.* 338 (34 S. E. 674), should have moved in his lifetime to recover possession of the north half of lot 58, and if he was absent from home, Mrs. Shrouder should have brought proceedings to recover possession. The application for homestead having been made in 1883, those named as minor beneficiaries in such application were of lawful age at the time of the death of their father in 1905. Under the law of this State, upon the death of the owner of any estate in realty, which estate survives him, title vests immediately in his heirs at law, subject to administration by the legal representative, if there be one, and the right of recovery is in the legal representative, if one; if none, the heirs may sue in their own name. Code, § 113-901. In this instance the right of recovery was in the heirs of Shrouder, since there was no administration upon his estate until 1919.

The homestead having never legally become operative against the title originally held by Eliza Clements, and later by Raines, a right, if any, purely equitable in its character cannot now be asserted for the first time, when it could have been asserted forty years or more ago. Shrouder is dead; his wife, Mrs. Sallie E. Shrouder, is dead. J. O. Slade, from whose heir the plaintiff now seeks to recover the possession of lands, is dead. Eliza Clements was lending money in her own name in 1879. She must have been a mature woman at the time. If she is not dead, she

is far past the Biblical three score and ten years. If living, from old age and lack of memory she may not be able to testify. The same conclusions must apply to J. H. Raines. Can the full truth of what occurred more than sixty years ago be now fairly established? The deaths of those known to be dead show that it cannot be. A delay of forty years or more, and the death of essential witnesses, when the truth of matters in controversy cannot be fairly established, makes the doing of equity either doubtful or impossible, and will bar the action. *Citizens & Southern Bank* v. *Ellis*, 171 *Ga.* 733 (156 S. E. 603); *Stephens* v. *Walker*, 193 *Ga.* 331 (18 S. E. 2d, 537).

■ Legal title to lot 58 having been voluntarily conveyed by Shrouder to Eliza Clements as security for a loan, and Raines' claim against the property having been acquired by payment to Eliza Clements, whatever transfer was taken from Clements to Raines was neither forged nor fraudulent within the meaning of the Code, § 85-407. The allegation that Slade at all times had knowledge of the homestead and the circumstances under which Raines acquired possession, is insufficient to charge fraud to Slade, since it is not shown that there was ever any legal redemption of the property by the Shrouders, and the homestead could not attach to the property as against the warranty deed made to Eliza Clements. If any fraud is alleged in the petition, Shrouder and his heirs had full knowledge of such fraud. "Fraud which must have been discovered, if usual and reasonable diligence had been exercised, is not a good reply to the statute of limitations." *Sutton* v. *Dye*, 60 *Ga.* 449. No legal or equitable proceedings were brought by Shrouder or Mrs. Shrouder prior to his death in 1905 to recover possession of the north half of lot 58. The heirs of Shrouder were of legal age in 1905. If Slade had been guilty of fraud, the heirs of Shrouder should have sought redress against him in their own name, since there was no administration upon Shrouder's estate until 1919.

In *McWhorter* v. *Cheney*, 121 *Ga.* 547 (49 S. E. 603), this court held: "Eighteen years have elapsed since the alleged fraud was committed; the husband is dead, and the ascertainment of the truth made more difficult. Equity follows the analogy of the law; and even in suits to recover land, when fraud is charged, it has been held that 'the period of limitations applicable to an ac-

tion . . for the fraud is the same as that which would apply to an action for the land, to wit; seven years from the discovery of the fraud.' *Cade* v. *Burton,* 35 *Ga.* 280. 'If the defendant has been guilty of a fraud by which the plaintiff has been debarred or deterred from his action, the period of limitations shall run only from the time of the discovery of the fraud.' Civil Code, § 3785. The statute of limitations is a statute of repose. When a person is defrauded and has knowledge of the fraud, the law expects him to ask redress, if at all, within the period of limitation. If he waits for a longer period, he is bound by his laches."

In the present suit, there is no merit in the contention that because of the fraudulent conduct of Raines and Slade title by prescription could not ripen in Slade and his heirs.

■ Attached to the petition in the court below, as an exhibit, is a copy of an agreement whereby Mrs. S. E. Shrouder in January, 1895, named J. H. Raines "to manage and control" and to rent out or lease said lands and collect the rents and profits. Insofar as the plaintiff may rely upon the principle that the permissive use or occupancy of lands cannot be the basis of prescription, she is confronted with the allegation of her petition, that Raines received the rent and income from all the lands for the years 1895 to 1898 inclusive, and after January, 1899—when he attempted to take the north half of the lot for his claim of indebtedness—he received the rents and income from the north half until he conveyed the same to his son-in-law Slade in 1903, which clearly shows that in January, 1899, Raines asserted a claim to the north half of said lot, that he claimed said land as his own, and that such adverse claim and possession was fully known by the beneficiary of the trust, Mrs. S. E. Shrouder. "The statute of limitations does not begin to run against express trusts, created by the act of the parties, or by the appointment of the law, so long as the trust continues, and is acknowledged to be a continuing, subsisting trust, for the reason that the possession of the trustee is the possession of the cestui que trust; but when the trust is denied by the trustee, and he claims to hold the trust funds or the trust property, as his own, adversely to his cestui que trust, the latter having knowledge of that fact, the statute will begin to run in favor of such express trustee from the time of such adverse claim or possession." *Keaton* v. *Greenwood,* 8 *Ga.* 97 (2) (supra); *Teasley* v. *Bradley,* 110 *Ga.* 501 (supra).

J. O. Slade entered into possession of the lands in 1903. It is contended that Mrs. Shrouder always repudiated the arrangement for Raines to have the north half of lot 58 and her the south half, and as evidence of such repudiation her indictment for trespass in 1904 is set forth. It is the function of the courts in proper proceedings brought for such purpose to determine title to lands. One act of physical violence cannot be substituted for a proper judicial determination, which was not sought in time for the truth to be ascertained. All legitimate inferences which can be drawn from the pleadings are to be construed most strongly against the pleader, and it is strongly inferred that after her conviction for trespass Mrs. Shrouder did not again interfere with the possession of Slade, and his possession and that of his successors in title has been continuous and adverse since that time.

By reason of the allegation that Raines was in possession of the land under his claim arising out of his having taken up the Eliza Clements deed, and by reason of his contention that he had not been repaid, Slade under his deed from Raines was in possession of the property under at least a color of title. *Connell* v. *Culpepper,* 111 *Ga.* 805 (35 S. E. 667) ; *Street* v. *Collier,* 118 *Ga.* 470 (45 S. E. 294) ; *Turner* v. *Neisler,* 141 *Ga.* 27 (6) (80 S. E. 461) ; *Byrom* v. *Riley,* 154 *Ga.* 580 (114 S. E. 642) ; *City of Barnesville* v. *Stafford,* 161 *Ga.* 588 (131 S. E. 487, 43 A. L. R. 1045).

The heirs of Shrouder were of legal age at the time of their father's death in 1905, and such heirs are not shown to have been laboring under any disability otherwise. Whatever rights may have existed under the alleged homestead were not sufficient to prevent title by prescription from ripening in Slade prior to the appointment of the plaintiff as administratrix of her father's estate in 1919. Code, § 85-413; *Danielly* v. *Lowe,* 161 *Ga.* 279 (3) (supra) ; *Payne* v. *Ormond,* 44 *Ga.* 514. Slade and his heirs held the land in question in adverse possession and under a claim of right for more than forty years, and title by prescription was acquired by them. Code, §§ 85-406, 85-407.

The present case is distinguished from that of *Davis* v. *Jones,* 95 *Ga.* 788 (23 S. E. 79), relied upon by the defendant in error, in that in the latter case legal title was in the applicant for homestead at the time the application was made. In the present case

Shrouder had only an equity of redemption in the lands set apart as a homestead, and the lands were never legally redeemed. Thus, before the claim of homestead could be pleaded to prevent prescription from running against the heirs of Shrouder, it would be necessary to obtain an adjudication that the lands were equitably redeemed, and, as before held, the length of time which has elapsed prevents the truth of matters in controversy from being fairly established, and bars such action.

The court should have sustained the general demurrer and dismissed the petition.

*Judgment reversed. All the Justices concur.*